IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Mr. Keir McQuistan<br>Inmate # A704871<br>C/O Mansfield Correctional Inst.<br>1150 North Main Street<br>Mansfield, Ohio 44901 | ]<br>]<br>]<br>]<br>]<br>] | Case No. |
| Petitioner, | ]<br>] | Judge |
| vs. | ]<br>] | |
| Ed Sheldon, Warden<br>Mansfield Correctional Inst.<br>1150 North Main Street<br>Mansfield, Ohio 44901 | ]<br>]<br>]<br>]<br>] | PETITION UNDER 28 U.S.C. §2254<br>FOR WRIT OF HABEAS CORPUS BY<br>A PERSON IN STATE CUSTODY. |
| C/O Attorney David Yost<br>The Ohio Attorney General<br>30 East Broad St., 14th Floor<br>Columbus, Ohio 43215 | ]<br>]<br>]<br>]<br>] | |
| Respondent. | ]<br>] | |

Respectfully submitted,

Mike Callow

Mike Callow #0065579
Attorney at Law
P. O. Box 650
Westfield Center, Ohio 44251
330−721−ATTY (2889) ph.
866−214−0367 toll free fax.
attorneymikecallow@gmail.com

1. Petitioner Keir McQuistan, Inmate Number A704871, is presently incarcerated by the State of Ohio in the Mansfield Correctional Institution, 1150 North Main Street, Mansfield, Ohio 44901.

2. Respondent Ed Sheldon is the Warden of Mansfield Correctional Institution.

3. Respondent was sentenced to three (3) years in prison by Sentencing Judgment entry filed January 9, 2017, ordered by Medina County Common Pleas Judge Joyce V. Kimbler, in Case No. 16 CR 0075, located in Medina County, Ohio.

4. Petitioner Keir McQuistan entered a plea of not guilty, proceeded to a bench trial, and was found guilty at bench trial. Keir McQuistan has maintained his innocence throughout the legal proceedings at trial and appeal.

5. Petitioner Keir McQuistan did testify at his trial.

6. Petitioner Keir McQuistan is serving a prison sentence for conviction of vehicular assault, a third-degree felony, a violation of O.R.C. §2903.08(A)(1)(a).

7. Petitioner Keir McQuistan was found guilty of two (2) counts by Judge Joyce V. Kimbler at the conclusion of a bench trial; however, Judge Joyce V. Kimbler determined that the two counts

were allied offenses of similar import and the court sentenced petitioner to the single count.

8. On or about January 30, 2017, Petitioner Keir McQuistan timely filed an appeal of the trial court's guilty finding and sentence, Ohio Ninth District Court of Appeals, Case No. 17 CA 0007-M.

9. An officer has probable cause to arrest a suspect for operating a vehicle under the influence of alcohol when, based on the totality of circumstances, the officer had sufficient information derived from a reasonably trustworthy source of facts and circumstances to cause a prudent officer to believe the suspect was driving under the influence of alcohol. Did Sergeant Dunbar have probable cause to arrest Keir Mcquistan ?

10. In considering the sufficiency of the evidence, the court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Was there sufficient evidence presented by the State on every element of the offenses of Aggravated Vehicular Assault to support the trial court's judgment of guilty?

11. To determine whether a judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs

the evidence and all reasonable inferences, considers the credibility of witnesses and considers whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Was the trial court's judgment of guilty against the manifest weight of the evidence?

12. The trial court should grant a hearing on a motion for new trial based on newly discovered evidence when the motion sets forth affidavits or grounds in support which demonstrate that there was a reasonable probability that the newly discovered evidence would have affected the outcome of the trial.

13. On or about February 14, 2018, the Ohio Ninth District Court of Appeals affirmed the trial court's decision.

14. On or about March 7, 2018, Petitioner Keir McQuistan timely filed a Petition to Vacate or Set Aside Judgment.

15. On or about March 23, 2018, Petitioner Keir McQuistan filed Instanter additional Petition to Vacate or Set Aside Judgment of Convictions of Sentence with Additional Expert Report.

16. On or about March 23, 2018, the Honorable Judge Joyce V. Kimbler transferred the case to the docket of the Honorable Judge Christopher J. Collier.

17. On or about April 4, 2018, the Honorable Judge Christopher J. Collier recused himself from the case.

18. On May 21, 2018, Petitioner Keir McQuistan filed an additional expert report in support of his petition for post-conviction relief.

19. On or about July 5, 2019, the Honorable Judge Robert Brown was assigned to the case.

20. On or about October 31, 2018, the Honorable Judge Robert Brown filed an entry dismissing the Petition without a hearing.

21. On or about November 29, 2018, Petitioner timely filed a Notice of Appeal of the trial court's dismissal and denial of hearing, Ohio Ninth District Court of Appeals, Case No. 18 CA 0104-M.

22. Petitioner Keir McQuistan timely filed an appeal of the Ohio Ninth District Court of Appeals decision to the Ohio Supreme Court, Case No. 2019-1475.

23. On or about January 21, 2020, the Ohio Supreme Court declined jurisdiction, by general journal entry and without explanation.

24. On or about October 4, 2019, Petitioner Keir McQuistan filed a Motion for Judicial Release with the trial court.

25. On or about November 13, 2019, the Honorable Judge Joyce V. Kimbler, the original trial judge in the case, the judge who on March 23, 2018 recused herself from the case and reassigned the case to the Honorable Christopher J. Collier, and without any order to un-recuse herself, denied Petitioner's Motion for Judicial Release.

26. On or about December 19, 2019, Petitioner again filed a Motion for Judicial Release. The motion remains pending without decision.

27. Petitioner Keir McQuistan has a right to a fair and impartial jurist. In his motion for post-conviction relief, Petitioner challenged that his trial counsel was ineffective in failing to properly challenge the trial court judge's participation in this case after hiring the prosecuting attorney to her staff in the time period after trial and prior to sentencing. The trial court initially determined that trial counsel was untimely in filing his motion and failed to appropriately challenge the judge continuing to rule on the case for failure to file appropriate challenge in the Ohio Supreme Court. Likewise, the appellate

court also determined trial counsel failed. Subsequently in Petitioner's timely filed petition for post-conviction relief, Petitioner alleged ineffective assistance of counsel for failing to file timely motion and failing to property challenge the judge's continued participation in the case, as found by both the trial court and the appellate court, and supported by an expert opinion that also found prejudice. With newly assigned trial judge after the original trial counsel recused herself, the trial court determined the issue moot under the principles of res judicata. In a subsequent appeal, the appellate court noted in its decision that the trial court determined the issue moot and failed to further address the assignment of error on appeal.

28. Petitioner Keir McQuistan has a right to an indictment that is free of defects and in this case indicates on its face that the grand jury made a finding of probable cause. The entirely secret Grand Jury process is a substitute process for the open court preliminary hearing process and a finding of probable cause by a qualified and competent magistrate. The finding of probable cause is fundamental to the process and no person may be held without such finding of probable cause. The open court process of a preliminary hearing is subject to various legal challenges.

The entirely secret grand jury process must at the very least be subject to the legal challenge that the indictment state on its face that the grand jury made a finding of probable cause.

29. Petitioner Keir McQuistan has a right to the process of post-conviction relief, including the right to a hearing, right to conduct discovery, right to compel witnesses to testify at same hearing, after he clears the procedural hurdles of producing newly discovered evidence not in the prior trial record, coupled with two (2) expert opinions in support of his claims for post-conviction relief. Petitioner, without the use of legal proceedings or assistance of civil discovery, provided the trial court with sufficient evidence to clear the gate-keeper functions of the court in screening out legal challenges without any merit. Petitioner provided the court with newly discovered evidence of "black box" data from the vehicle operated by him with an expert opinion interpreting the data and discussing why the black box data was critically important to the trial case. Petitioner also provided the trial court with an expert opinion supporting the claims for ineffective assistance of trial counsel and outlining the prejudice to Petitioner resulting therefrom.

30. Petitioner Keir McQuistan has a right not to be convicted of multiple counts, if said counts are merged at sentencing. Petitioner challenges the trial court's sentencing entry as void in that it does not clearly and correctly convict him of a single count after the trial court determined that the multiple offenses merged.

31. Petitioner Keir McQuistan has a right to a fair and impartial jurist upon his motion for judicial release and has a right to have his motion for judicial release be determined not by the original trial judge who recused herself and reassigned the case, or by the subsequent judge who also recused himself, but by the then duly appointed Honorable Judge Brown who accepted assignment and has assigned authority over the case to make decisions, including the decision to grant or deny judicial release.

32. Petioner asserts that the Sixth Amendment to the U.S. Constitution and Section 10, Article I of the Ohio Constitution guarantee petitioner the right to effective assistance of counsel. Petitioner's trial counsel was deficient, and that deficient performance caused prejudice. Prejudice is shown when there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland vs. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). Trial counsel has a duty to conduct a reasonable investigation to determine possible defenses or to make a reasonable decision that a particular investigation is unnecessary. Strickland, at 691. Ohio has adopted the Strickland test for evaluating counsel's performance. State vs. Smith, 17 Ohio St. 3d 98, 477 N.E. 2d 1128 (1985); State vs. Bradley, 42 Ohio St. 136; 538 N.E. 2d 373 (1989); State vs. Herring, 142 Ohio St. 3d 165, 2014 Ohio 5228, 28 N.E. 3d 1217.

33. Petitioner asserts that in this case, trial counsel failed to reasonably investigate and then to introduce into evidence the electronic recordings of the "black box" in petitioner's F150 pickup truck. The electronic recordings from petitioner's vehicle clearly indicate the following facts: petitioner was traveling the speed limit for a period of 20 seconds prior to the crash; petitioner applied the brakes approximately 2 or 3 seconds prior to impact; petitioner vehicle applied anti-lock braking system (ABS) approximately 2 seconds prior to impact,

which indicates that the operator utilized the brake in a hard manner; and, petitioner's vehicle was traveling approximately 13 miles per hour immediately prior to impact.

34. Petitioner asserts that in trial court proceedings he attached an 11-page report titled BOSCH CDR Crash Data File.

35. Petitioner asserts that he further moved the trial court for additional time to further support his claims which required the assistance of an attorney, investigator, or expert in order to provide the additional evidence in support.

36. Petitioner asserts that he requested additional time to file under separate cover Motions for Expert Assistance.

37. Petitioner asserts that he requested additional time to conduct discovery in this case, issue subpoenas to compel the testimony of relevant fact witnesses, and a hearing in which to present fact and expert testimony in support of his claims.

38. Petitioner asserts that the Sixth Amendment to the U.S. Constitution and Section 5, Article I of the Ohio Constitution guarantee petitioner the right to jury trial. The right to a jury trial is synonymous with the right to a fair and impartial jury and/or the right to a fair and impartial jurist. Petitioner was denied the right to a fair and impartial jurist in his trial and/or

during his post—trial motions and sentencing hearing. The trial court ruled on petitioner's post—trial motions and sentenced petitioner after having hired the State of Ohio's trial counsel as a magistrate on her office staff, creating at the very least an appearance of impropriety and bias against petitioner. Further, petitioner's trial counsel was deficient, and that deficient performance caused prejudice. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland vs. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).

39. Petitioner asserts that his trial counsel had a duty to conduct a reasonable investigation to determine possible defenses or to make a reasonable decision that a particular investigation is unnecessary. Strickland, at 691. Ohio has adopted the Strickland test for evaluating counsel's performance. State vs. Smith, 17 Ohio St. 3d 98, 477 N.E. 2d 1128 (1985); State vs. Bradley, 42 Ohio St. 136; 538 N.E. 2d 373 (1989); State vs. Herring, 142 Ohio St. 3d 165, 2014 Ohio 5228, 28 N.E. 3d 1217. Trial counsel failed to timely file a motion for new trial as first determined by the trial

court and then affirmed by the appellate court. State vs. McQuistan, 2018-Ohio-539, see ¶49. Trial counsel also failed to properly file an affidavit of disqualification with the Ohio Supreme Court as determined by the appellate court. McQuistan, see ¶49.

40. Petitioner asserts that the trial and appellate court made certain findings: it should be acknowledged that the defendant's motion in this matter is untimely for failing to file within fourteen (14) days after the verdict; failing to file within fourteen (14) days of newly discovered evidence or establishing when such newly discovered evidence was established in order to appropriately determine the deadline to file; failing to provide an adequate affidavit not "deficient on its face" in support; and, failing to support the motion with any affidavit or case law in support.

41. From the appellate decision and court findings: McQuistan (i.e. his trial counsel) failed to demonstrate that his motion was timely filed under Criminal Rule 33(B); failed to show that there existed a strong probability that the information he discovered would have changed the result in this matter; and, failed to file an affidavit of disqualification with the Supreme Court.

42. Petitioner asserts that the Fifth Amendment to the U.S. Constitution and Section 14, Article I of the Ohio Constitution guarantee petitioner the right to indictment by a grand jury. Synonymous with the right to indictment by a grand jury is the requirement that the grand jury make a specific finding of probable cause on the face of the indictment.

43. Petitioner asserts that the indictment in this case does not include any reference or statement evidencing a finding of probable cause. The primary purpose of the grand jury is to determine whether there is probable cause to support the charges akin to a preliminary hearing process. Considering the protected secrecy of the grand jury and grand jury proceedings as well as the inability of petitioner's to adequately review and challenge these secret grand jury proceedings, the indictment should state that the grand jury affirmatively made a finding of probable cause. Absent such affirmative statement on the face of the indictment, the indictment is void.

44. Petitioner asserts that the Fifth Amendment to the U.S. Constitution provides, in relevant part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The Ohio

Constitution, Article I, Section 10, is identical to its federal counterpart and provides, in relevant part: "No person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Ohio Criminal Rule 7 states is subsection (a): a felony that may be punished by death or life imprisonment shall be prosecuted by indictment. Ohio Criminal Rule 7 also states in subsection (b): the indictment shall be signed ··· and contain a statement that the petitioner has committed a public offense specified in the indictment.

45. Petitioner asserts that the grand jury process is the alternative to the preliminary hearing process wherein a qualified and competent magistrate must make a finding of probable cause before the petitioner may remain subject to arrest and prosecution for crimes. As qualified and competent magistrates are subject to review and appellate review, the grand jury findings should likewise be subject to review in order to protect the constitutional rights of the citizenry.

46. Petitioner asserts that it is important to reflect that there is legal precedent for dismissal of grand jury indictments pursuant to the court supervisory role as well as based on constitutional violations. See United States v. Hogan (the court dismissed an

indictment based on systemic deterrence of prosecutorial misconduct because it found the actions of the prosecutor to have impaired the independent role of the grand jury when in several instances the prosecutor characterized the petitioner as a "real hoodlum". *See also*, United States v. Serubo, 604 F.2d 807, 817 (3d Cir. 1979) (costs of continued prosecutorial misconduct are substantial); United States v. McCord, 509 F.2d 334, 349 (D.C. Cir. 1974) (en banc) (dismissal preserves the judicial process from contamination), *cert denied*, 421 U.S. 930 (1975).

47. Petitioner asserts that in State vs. Hill, 2015-Ohio-2389, the court reviewed that the Fifth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution provide that prosecutions for capital or otherwise infamous crimes (i.e., felonies) must be instituted by grand jury indictments. Costello v. U.S., 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397 (1959); State v. Jackson, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 120. In Hill, the court also discusses that: historically the grand jury serves a dual purpose of determining whether there is probable cause to believe a crime was committed and protecting citizens against unfounded criminal prosecutions." Citing, Branzburg v. Hayes, 408 U.S. 665, 686-687, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972),

citing <u>Wood v. Georgia</u>, 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). {¶19} The grand jury's ultimate purpose is "not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge". <u>Hill</u>, citing, <u>U.S. v. Williams</u>, 504 U.S. 36, 56, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), citing <u>U.S. v. Calandra</u>, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

48. Petitioner asserts that that considering any grand jury argument for a finding of probable cause, the court should consider the protected secrecy of the grand jury process and the difficulty a petitioner faces in challenging any piece or part of the grand jury process. The Ohio Supreme Court has held, in accordance with U.S. Supreme Court precedent, that "[g]rand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." <u>State v. Greer</u>, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981). There is no disclosure of the instructions a prosecutor gives the grand jury and therefore no assurances that the grand jury made any findings to any particular legal standard. Further,

the grand jury acts as an independent body subject to minimal oversight by the judiciary. The simplest policy for insuring that the grand jury found sufficient probable cause to charge the petitioner is that the indictment should indicate on its face that the grand jury made a finding of probable cause. Without a finding on the face of the indictment, how could anyone be even reasonably convinced that the grand jury found probable cause?

49. Petitioner asserts that the court should also consider that a failure in the face of the indictment is a fundamental and systematic error that can be addressed at any point in the legal process, even for the first time on appeal. In Hill, the court defined an error is "fundamental" when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." The courts have held that absent a constitutional error, a court may not exercise its supervisory power to dismiss an indictment unless "it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. Id. Other courts have held that "systemic flaws" in the charging

process jeopardize the protections guaranteed by the Fifth Amendment and may be fundamentally unfair. For example, in Vasquez v. Hillery, 474 U.S. 254, 264, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), the court held that evidence of racial discrimination in the grand jury selection process undermines the structural protections promised by the grand jury because it leaves the reviewing court incapable of determining if a "properly constituted" grand jury would have indicted the petitioner.

50. Petitioner asserts that in this case, petitioner has been made to stand for the charges in the indictment each that fails to find probable cause or to notify petitioner on their face that the grand jury made the findings of probable cause as to either charge. This fundamental flaw in the indictment violates petitioner's constitutionally protected rights and requires this court to determine the indictments void and the charges dismissed against him.

51. Petitioner further asserts that to grant said motion would require the State of Ohio to return to the grand jury and request an indictment that finds on its face that the grand jury has made a finding of probable cause. Considering the gravity of these offenses and the gravity of the Constitutional protected rights

in jeopardy herein, petitioner argues that to require such return to the grand jury would be a minimal task in comparison.

52. Petitioner asserts that the Medina County grand jury issues an indictment in this case which is part of the appellate record. However, the indictment and its failure to make a finding of probable cause on its face is a violation of petitioner's constitutional rights.

53. Petitioner asserts that the Sixth Amendment to the U.S. Constitution and Section 10, Article I of the Ohio Constitution guarantee petitioner the right to effective assistance of counsel. Petitioner's trial counsel was deficient, and that deficient performance caused prejudice. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland vs. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). Trial counsel has a duty to conduct a reasonable investigation to determine possible defenses or to make a reasonable decision that a particular investigation is unnecessary. Strickland, at 691. Ohio has adopted the Strickland test for evaluating counsel's

performance. <u>State vs. Smith</u>, 17 Ohio St. 3d 98, 477 N.E. 2d 1128 (1985); <u>State vs. Bradley</u>, 42 Ohio St. 136; 538 N.E. 2d 373 (1989); <u>State vs. Herring</u>, 142 Ohio St. 165, 2014 Ohio 5228, 28 N.E. 3d 1217.

54. Petitioner asserts that in this case, the State of Ohio presented during its case in chief a portion of the only video that is available in this case, a dash cam video from officer Heidelman of the Seville Police Department. However, there is no indication in the record as to what portion of the video was played during trial. Further, there was no attempt by trial counsel to introduce the video evidence, or that portion which was not played in the State's case in chief, into evidence in the petitioner's case. Although Officer Heidelman was apparently located out of state at times relevant to the trial, there was no effort to subpoena him back to Ohio to testify in this case or to authenticate the video in this case. There was no effort by trial counsel to authenticate the video with other witnesses or by other means. There was no motion in limine to prohibit the State of Ohio from playing the portion of the video it played. There was a failure to mark the record with which portion of the video was played for purposes of the record and for purposes of

appeal. Further, trial counsel failed to reasonably investigate other fact witnesses and other video evidence of the traffic accident on the date in question. Further, trial counsel failed to reasonably investigate other video evidence of other traffic accidents on the same date and time, to which there were many, in an effort to substantiate petitioner's claims that the roads were ice and snow covered or that the road conditions were slick. The video clearly indicates a roadway with snow and ice conditions. The video is the best evidence of petitioner's speech patterns, his gate, and his demeanor on the date in question. The video also evidences multiple potential fact witnesses on the scene who were not investigated for potential fact witnesses. The video indicates no less than six (6) persons who interacted with petitioner at the scene of the traffic accident, only two of which gave any accounts of their interactions with petitioner.

55. Petitioner asserts that the following evidence and/or affidavits are attached to support the claim: Petitioner is prepared to submit the full and complete video of the traffic accident scene referred to as the dash cam video of Officer Heidelman. The video is prepared for play during a hearing and a hearing is hereby requested. Further evidence supporting these

claims is not attached because petitioner needs the assistance of an attorney, investigator, or expert in order to provide the additional evidence in support. Petitioner will file under separate cover Motions for Expert Assistance.

56. Respondent petitions this Honorable Court for relief from his state court conviction and sentence.

Respectfully submitted,

Mike Callow #0065579
Attorney at Law

Certificate of Service

This certifies that a true and accurate copy of this pleading was served pursuant to rule upon this _____ 3/27 _____, 2020, as follows:

Prosecuting Attorney S. Forrest Thompson
72 Public Square
Medina, Ohio 44256

Ed Sheldon, Warden
Mansfield Correctional Inst.
1150 North Main Street
Mansfield, Ohio 44901

C/O Attorney David Yost
The Ohio Attorney General
30 East Broad St., 14th Floor
Columbus, Ohio 43215

Respectfully submitted,

Mike Callow #0065579
Attorney at Law