IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| KEIR MCQUISTAN,<br><br>    Petitioner,<br><br>vs.<br><br>ED SHELDON, WARDEN,<br><br>    Respondent. | CASE NO. 1:20-CV-00656-DAR<br><br>JUDGE DAVID A. RUIZ<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

On March 27, 2020, Petitioner Keir McQuistan, a prisoner in state custody, filed through counsel a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). On September 4, 2020, Respondent Ed Sheldon, in his official capacity as Warden of the Mansfield Correctional Institution, filed a Return of Writ. (ECF #10). Mr. McQuistan did not file a Reply.

The District Court has jurisdiction over the petition under § 2254(a). On April 22, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation. (Non-document entry of Apr. 22, 2020). On November 23, 2020, pursuant to General Order 2020-26, the matter was reassigned to a different Magistrate Judge. (Non-document entry of Nov. 23, 2020). On May 26, 2021, the matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 26, 2021). And on February 22, 2022, the matter was reassigned to a new district judge. (Non-document entry of Feb. 22, 2022).

For the reasons discussed below, I recommend the Petition be **DISMISSED**.

PROCEDURAL HISTORY

**Factual Findings of the Ohio Ninth Appellate District**

The Ninth District Court of Appeals, Medina County, Ohio, set forth the facts of this case on direct appeal. These factual findings "shall be presumed to be correct" and Mr. McQuistan has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Ninth District determined:

> [¶ 2] On the evening of February 13, 2016, McQuistan struck a family's car from behind while traveling east on Greenwich Road. The family's five-year-old son suffered multiple skull fractures as a result of the accident and had to undergo emergency surgery. When police officers spoke with McQuistan at the scene, they found that his eyes were red and glassy, he smelled strongly of alcohol, and he had slurred speech. They also found that he was unsteady on his feet and largely unresponsive to their questioning. After McQuistan refused to engage in any field sobriety testing, the police arrested him.
>
> . . .
>
> [¶ 20] The driver of the car that McQuistan struck testified that, on the evening of the accident, he was stopped on Greenwich Road, waiting to make a left-hand turn onto Hubbard Valley Road. His fiancée was seated next to him and his five-year-old son was seated directly behind him. He testified that it was cold that day, but the roads were clear, having been plowed and salted. He estimated that his car remained stationary for between thirty seconds and one minute as he waited for an opportunity to turn. He then briefly noticed headlights in his rearview mirror before a vehicle struck his car from behind and pushed it through the intersection and into a ditch on the other side of Hubbard Valley Road. Both the driver and his fiancée denied hearing any noise resembling tires squealing on the pavement or braking directly before the crash occurred.
>
> [¶ 21] The driver identified McQuistan as the driver of the vehicle that struck his car. He stated that, while he tended to his family, McQuistan remained in his vehicle. He then saw McQuistan step out of his vehicle and begin walking towards him. Because McQuistan's vehicle was located several hundred feet away, the driver also began walking so as to meet McQuistan halfway. The driver testified that McQuistan had his cell phone out while walking and was looking at it rather than making eye contact. As the two converged, McQuistan immediately demanded to know why the driver had been stopped in the middle of the road. The driver testified that it was difficult to understand McQuistan because his speech was slurred. He also testified that

McQuistan's lack of concern angered him, so he responded in disbelief and may have used an expletive. According to the driver, McQuistan mumbled something, turned away, and walked back to the rear passenger bumper of his vehicle, and urinated on the side of the road. The driver testified that McQuistan's actions, in conjunction with his slurred speech, caused him to believe that McQuistan was impaired.

[¶ 22] Ohio State Highway Patrol Trooper Aleksander Tot responded to the scene of the accident. He testified that McQuistan was seated in his vehicle when he arrived, having already given his driver's license information to a local officer. Trooper Tot testified that he approached McQuistan's vehicle and asked him what happened. According to the trooper, McQuistan refused to respond or answer any of his questions. He testified that McQuistan had bloodshot and glassy eyes and the odor of an alcoholic beverage was coming from his person. He further testified McQuistan was unsteady on his feet, as evidence by the fact that he bumped into Trooper Tot as the two walked to his cruiser. Though Trooper Tot asked McQuistan to perform field sobriety testing, McQuistan refused to look at the stimulus for the horizontal gaze nystagmus test or participate in any of the other tests. Trooper Tot testified that, instead, McQuistan looked directly at him and "stare[d] like he was going to fight."

[¶ 23] With regard to the accident itself, Trooper Tot testified that he documented the scene and inspected the damage to both vehicles. He stated that both vehicles were damaged at their center points, meaning that McQuistan had struck the driver's car straight on without attempting to swerve or take "any evasive actions to avoid the crash." Likewise, he stated that there was no evidence of any tire marks on the road that might have shown an attempt at stopping.

[¶ 24] Sergeant Dunbar testified that he arrived at the scene of the accident after Trooper Tot and conferred with him on arrival. He then attempted to speak to with McQuistan, but only received a "slurred garbled" response. Sergeant Dunbar testified that McQuistan had red, glassy eyes and that there was a strong odor of alcohol coming from his person. He stated that McQuistan refused to engage in field sobriety testing or answer when asked if he had consumed any alcohol. After McQuistan was arrested and transported back to the station, he also refused to take a breath test, stating that he "did not trust the machine." Sergeant Dunbar testified that McQuistan's speech was still slurred at that time. Though he refused to take a breath test, McQuistan ultimately admitted to having consumed one beer earlier that day. Sergeant Dunbar testified that McQuistan's speech, appearance, and behavior were all consistent with impairment.

[¶ 25] As to the road conditions that day, Sergeant Dunbar testified that he had no difficulty controlling his cruiser when traveling on Greenwich Road. He testified that there was snow on the sides of the road, but the road itself was clear. Moreover, photographs that the State produced at trial showed the road was clear of snow. There was testimony that Greenwich Road runs straight for a considerable distance

and has a slight downhill grade as it intersects with Hubbard Valley Road. Accordingly, there was evidence that there were no curves in the road or hills that would have obstructed McQuistan's line of sight.

. . .

[¶ 29] McQuistan argues that his convictions are against the weight of the evidence because he did not drive while impaired. According to McQuistan, he sustained a serious concussion when his airbag deployed and, as a result, exhibited symptoms consistent with that condition. He notes that the other driver was biased against him and lacked credibility, as he had filed a civil suit, had prior convictions, and, when pressed, changed his testimony about seeing McQuistan urinating on his truck. He also notes that the paramedic who examined him directly after the accident did not detect any odor of alcohol on his person.

[¶ 30] Scott Vallant, a paramedic for Wadsworth, testified that he spoke with McQuistan for a few minutes while responding to the scene of the accident. Vallant stated that he did not notice any odor of alcohol when talking with McQuistan. He clarified, however, that he had his face in the wind during the entire exchange. He testified that he never brought McQuistan into his rig or examined him because McQuistan resisted and was "pretty emphatic [] that he didn't want treatment."

[¶ 31] The driver that McQuistan struck readily admitted that he had several prior felony convictions and that his family had filed a civil suit against McQuistan in connection with the accident. Yet, he explained that his son had been seriously injured as a result of the accident, underwent emergency surgery, was hospitalized for several days, and was still suffering from lasting complications. As to his testimony about McQuistan urinating, the driver initially testified that McQuistan "stepped towards the passenger rear bumper of his truck and start[ed] urinating right on the side of his truck." On cross-examination, he then explained that he meant McQuistan urinated on the ground by the side of his truck, not directly on the truck itself. He admitted that he could not actually see McQuistan urinating from his point of view, but testified that McQuistan's stance was consistent with him urinating. He testified that he watched McQuistan the entire time and there was no doubt in his mind that he was urinating. Accordingly, the record does not support McQuistan's claim that the driver changed his testimony on that point.

[¶ 32] Trooper Tot stated that McQuistan never complained of any injury and never requested medical attention. Indeed, he testified that he specifically asked McQuistan whether he needed medical attention and McQuistan refused to answer. Trooper Tot stated that he had experience with individuals who had been injured in airbag deployments and McQuistan's behavior was distinctly different than that of those individuals. He testified that McQuistan did not appear to have difficulty

4

understanding him; he just refused to cooperate and glared angrily at him during their encounter.

[¶ 33] Both McQuistan's daughter and his wife testified in his defense. His daughter testified that she visited her parents the day after the accident and McQuistan was acting unusually. Specifically, he was watching television at a low volume with the curtains drawn and only had limited interaction with his grandchildren. McQuistan's daughter denied that McQuistan drank alcohol on a regular basis, but admitted that she no longer lived at her parents' house.

[¶ 34] McQuistan's wife testified that the weather was bad the day of the accident, but McQuistan left in the morning to go skiing. She testified that she began to worry when he was not home by 6:00 p.m., so she tried texting him. She initially testified she never spoke to McQuistan and did not learn of his whereabouts until Sergeant Dunbar phoned about his arrest. On cross-examination, however, the State presented her with phone records, evidencing that several calls took place between her and McQuistan's cell phone shortly after the accident had occurred. McQuistan's wife then recalled that she briefly spoke to McQuistan at those times. She claimed, however, that the signal was poor and she largely could not understand what he was saying.

[¶ 35] According to McQuistan's wife, McQuistan was visibly shaken when she came to get him at the police station and did not seem to understand what was happening. She denied that his speech was slurred or that she could smell alcohol on his person. She testified that, once home, he was nauseated, had a headache, was sensitive to light, and had difficulty remembering much about the accident. Nevertheless, she admitted that he did not seek medical care for three days, which was the same day he was due in court. She testified that McQuistan ultimately saw several physicians about his symptoms because they continued to occur. She testified she was not directly involved in his medical appointments, but, after he had an MRI, he told her he had been diagnosed with "severe brain trauma."

[¶ 36] Dr. Matthew Finneran, a family medicine practitioner, saw McQuistan three days after the accident. He testified that McQuistan reported driving slowly on an icy road and striking another car because a crest in the road prevented him from seeing the car and stopping in time. Dr. Finneran ultimately diagnosed McQuistan with a concussion, but admitted he did so based on McQuistan's self-reported symptoms. He testified that all of McQuistan's exams were normal, but that he later referred him to a neurologist because he continued to report having symptoms. According to Dr. Finneran, all of the tests the neurologist performed, including an MRI, produced normal and/or clinically insignificant results. He also confirmed that, per his medical records, McQuistan consumed two bottles of wine per week.

5

[¶ 37] McQuistan testified in his own defense. He stated that, on the day of the crash, he drove south to go skiing for the day. He described how he skied until lunch, stopped for a bowl of chili and one 20-ounce beer, and then skied again until it was time to go home. According to McQuistan, the weather conditions worsened the closer he got home. He reported that the conditions on Greenwich Road were snowy and prevented him from seeing the other driver's car at a distance. He stated he did not see the driver's taillights until the last minute, at which point he braked "in a hard, aggressive manner." After that, his airbag deployed and he believed he was rendered unconscious for up to 25 minutes.

[¶ 38] McQuistan testified that he could recall very little about the aftermath of the crash. He stated he could not remember what he said to the other driver or the police. He also stated he could not remember whether he urinated near his truck, but testified that doing so would be out of character for him. He could not recall Sergeant Dunbar explaining the breath test to him or refusing the test. McQuistan testified that he only drank one beer that day and that the accident occurred as a result of the weather and road conditions.

[¶ 39] McQuistan conceded that there was no crest or hill on Greenwich Road to obstruct his view of the other driver's car. Though he may have described a crest or hill blocking his view when telling Dr. Finneran about the accident, McQuistan insisted that he merely offered the doctor "a scenario" and that the "relevant portions" of his description were correct. He also insisted that doctors told him he had experienced significant brain trauma, despite the fact that all of his test results were normal and/or clinically insignificant. He testified that he experienced painful symptoms immediately following the accident and had difficulty concentrating and functioning that weekend. Nevertheless, he admitted that he never sought emergency medical attention. He also admitted that, the day after the accident, he went through the process of shaving off his beard.

*State v. McQuistan*, No. 17CA0007-M, 2018 WL 828748, at *1, *4-5, *6-*8 (Ohio Ct. App. Feb. 12, 2018) (*McQuistan I*).

**State Court Conviction**

On February 23, 2016, a Medina County Grand Jury indicted Mr. McQuistan on one count of aggravated vehicular assault (in violation of Ohio Rev. Code § 2903.08(A)(1)(a)) and one count of vehicular assault (in violation of Ohio Rev. Code § 2903.08(A)(2)(b)). (ECF #10-1,

PageID 92-93). On March 24, 2016, Mr. McQuistan, through counsel, pled not guilty to both charges. (*Id.* at PageID 94).

On April 19, 2016, Mr. McQuistan moved to suppress statements and evidence seized or obtained from him after his arrest and the results of any scientific or physical tests. (*Id.* at PageID 95-99). On September 22, 2016, the trial court held a hearing on the motion. Sergeant Alan Dunbar of the Ohio State Highway Patrol testified at the hearing. (*See* Transcript of Suppression Hearing, Sept. 22, 2016, ECF #10-3, PageID 689-739). Sergeant Dunbar explained he is trained to detect indicia of alcohol impairment, such as "red, glassy eyes, slurred speech," and being "unsteady on your feet." (*Id.* at PageID 694). When Sergeant Dunbar arrived on the scene, he could smell the odor of an alcoholic beverage, asked Mr. McQuistan if he was okay, and received "a garbled answer." (*Id.* at PageID 697). Sergeant Dunbar also observed red, glassy eyes and garbled, slurred speech. (*Id.* at PageID 698). Sergeant Dunbar stated Mr. McQuistan admitted to having an alcoholic beverage at a ski resort but refused to perform any field sobriety tests. (*Id.* at PageID 698-99). Sergeant Dunbar testified Mr. McQuistan was uneasy on his feet. (*Id.* at PageID 710).

On September 23, 2016, the trial court denied the motion to suppress because the arrest was supported by probable cause. (ECF #10-1 at PageID 101-02). On October 31, 2016, Mr. McQuistan waived his right to a trial by jury and elected to be tried by the judge. (*Id.* at PageID 104). On November 7, 2016, the trial court took the matter under advisement. (*Id.* at PageID 108). On November 14, 2016, the trial court found Mr. McQuistan guilty of both counts. (*Id.* at PageID 105).

On December 29, 2016, Mr. McQuistan filed a motion to vacate the verdict and grant a new trial because the trial judge hired the assistant prosecuting attorney assigned to his case as her Magistrate. In his motion, Mr. McQuistan asserted the following:

> The trial began on October 31, 2016 and prior to proceeding, the Defendant executed a waiver of jury trial in open court. The trial to the Court proceeded on October 31, November 1, 2 and the afternoon of November 4 and afternoon of November 7, 2016 when the Court took the matter under advisement.
>
> In the general election held on November 8, 2016, county prosecutor Dean Holman, was defeated in the election and shortly thereafter, the Defendant became aware of the fact that the Judge had hired the Assistant Prosecuting Attorney . . . who had tried the case before the Court, to be her Magistrate.
>
> The Court rendered its decision in this matter and entered the guilty verdicts on November 14, 2016. The Defendant is unaware whether or not the verdict was entered before the decision was made to hire [the] Assistant Prosecuting Attorney . . . as her Magistrate or thereafter.
>
> In any event, the Defendant would contend that if there was a relationship that existed between the Court and the Assistant Prosecuting Attorney handling the case to the extent that the Court was willing to hire the Assistant Prosecuting Attorney as her Magistrate either before the verdict was rendered or almost immediately after the verdict was rendered that, that is information that the Defendant and the Defendant's counsel should have been made aware of by the Court prior to the Defendant waiving his right to a jury trial.
>
> The Defendant would contend that had he been made aware of the closeness of that relationship he most assuredly would not have waived his right to a jury trial in this matter and would have proceeded with a trial by jury.
>
> The Defendant would contend that at the very least there is an appearance of impropriety in this matter and the Defendant believes he has been prejudiced by the relationship that may have existed between the Court and Assistant Prosecuting Attorney handling the case.

(*Id.* at PageID 107-09). Mr. McQuistan requested the trial court vacate the guilty judgment and set the matter for a jury trial. (*Id.* at PageID 109).

On December 30, 2016, the trial judge denied Mr. McQuistan's motion as untimely and stated there was no relationship between her and the assistant prosecuting attorney of which to advise Mr. McQuistan at the time of trial, hiring the assistant prosecuting attorney as magistrate had no impact on the court's verdict, and the court relied on the evidence presented at trial. (*Id.* at 115-19). In addition, the trial court noted, "[a]n affidavit of disqualification must be filed as soon as possible after the incident giving rise to the claim of bias and prejudice occurred and failure to do so may result in waiver of the objection." (*Id.* at PageID 116).

At the sentencing hearing on January 5, 2017, the court overruled an oral motion from Mr. McQuistan's counsel that the court recuse itself and provide seven days to file with the Supreme Court of Ohio. (Sentencing Tr., ECF #10-9, PageID 1787). The court determined the two charges were allied offenses of similar import and the State elected to have Mr. McQuistan sentenced on the aggravated vehicular assault charge. (*Id.* at PageID 120). The court imposed a three-year prison term and a mandatory three years of post-release control. (*Id.* at PageID 120-21).

**Direct Appeal**

On January 30, 2017, Mr. McQuistan, through new counsel, filed a notice of appeal to the Ninth District. (*Id.* at PageID 122). In his appellant's brief, Mr. McQuistan raised the following assignments of error:

1. The trial court erred in overruling Keir McQuistan's motion to suppress. Sergeant Dunbar lacked probable cause to arrest the driver for operating a vehicle while under the influence of alcohol.

2. The trial court's judgment of guilty is not supported by sufficient evidence.

3. The trial court's judgment was against the manifest weight of the evidence.

4. The trial court abused its discretion when it denied Mr. McQuistan's motion for a new trial without a hearing and refused to recuse itself from the case.

9

(*Id.* at PageID 127). The State filed a brief in opposition (*id.* at PageID 200-32) and Mr. McQuistan

filed a reply brief (*id.* at PageID 233-42). On February 14, 2018, the Ninth District affirmed the

judgment of the trial court. (*Id.* at PageID 243-63; *see also McQuistan I,* 2018 WL 828748). Mr.

McQuistan did not appeal to the Supreme Court of Ohio.

**Petition to Vacate or Set Aside the Judgment of Conviction/Sentence**

On March 7, 2018, Mr. McQuistan, through current habeas counsel, filed a Petition to

Vacate or Set Aside the Judgment of Conviction/Sentence and raised the following claims:

1.   The Sixth Amendment to the U.S. Constitution and Section 10, Article I of
     the Ohio Constitution guarantee petitioner the right to effective assistance
     of counsel. Petitioner's trial counsel was deficient, and that deficient
     performance caused prejudice. Prejudice is shown where there is a reasonable
     probability that, but for counsel's unprofessional errors, the result of the
     proceedings would have been different.

     In this case, trial counsel failed to reasonably investigate and then to
     introduce into evidence the electronic recordings of the "black box" in
     petitioner's F150 pickup truck. The electronic readings from petitioner's
     vehicle clearly indicate the following facts: petitioner was traveling the speed
     limit for a period of 20 seconds prior to the crash; petitioner applied the
     brakes approximately 2 or 3 seconds prior to impact; petitioner vehicle
     applied anti-lock braking system (ABS) approximately 2 seconds prior to
     impact, which indicates that the operator utilized the brake in a hard manner;
     and, petitioner's vehicle was traveling approximately 13 miles per hour
     immediately prior to impact.

2.   The Sixth Amendment to the U.S. Constitution and Section 5, Article I of
     the Ohio Constitution guarantee petitioner the right to trial by jury. The
     right to a jury trial is synonymous with the right to a fair and impartial jury
     and/or the right to a fair and impartial jurist. Petitioner was denied the right
     to a fair and impartial jurist in his trial and/or during his post-trial motions
     and sentencing hearing. The trial court ruled on petitioner's post-trial
     motions and sentenced petitioner after having hired the State of Ohio's trial
     counsel as magistrate on her office staff, creating at the very least an
     appearance of impropriety and bias against petitioner.

Further, petitioner's trial counsel was deficient, and that deficient performance caused prejudice. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Trial counsel failed to timely file a motion for new trial as first determined by the trial court and then affirmed by the appellate court. Trial counsel also failed to properly file an affidavit of disqualification with the Ohio Supreme Court as determined by the appellate court.

3. The Fifth Amendment to the U.S. Constitution and Section 14, Article I of the Ohio Constitution guarantee a petitioner the right to indictment by a grand jury. Synonymous with the right to indictment by a grand jury is the requirement that the grand jury make a specific finding of probable cause on the face of the indictment.

The Medina County grand jury issues an indictment in this case which is part of the appellate record. However, the indictment and its failure to make a finding of probable cause on its face is a violation of petitioner's constitutional rights.

4. The Sixth Amendment to the U.S. Constitution and Section 10, Article I of the Ohio Constitution guarantee petitioner the right to effective assistance of counsel. Petitioner's trial counsel was deficient, and that deficient performance caused prejudice. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

In this case, the State of Ohio presented during its case in chief a portion of the only video that is available in this case, a dash cam video from officer Heidelman of the Seville Police Department. However, there is no indication in the record as to what portion of the video was played during trial. Further, there was no attempt by trial counsel to introduce the video evidence, or that portion which was not played in the State's case in chief, into evidence in the petitioner's case. Although Officer Heidelman was apparently located out of state at times relevant to the trial, there was no effort to subpoena him back to Ohio to testify in this case or to authenticate the video in this case. There was no effort by trial counsel to authenticate the video with other witnesses or by other means. There was no motion in limine to prohibit the State of Ohio from playing the portion of the video it played. There was a failure to mark the record with which portion of the video was played for purposes of the record and for purposes of appeal. Further, trial counsel failed to reasonably investigate other fact witnesses and other video evidence of the traffic accident on the date in question. Further, trial counsel failed to

11

reasonably investigate other video evidence of other traffic accidents on the same date and time, to which there were many, in an effort to substantiate petitioner's claims that the roads were ice and snow covered or that the road conditions were slick. The video clearly indicates a roadway with snow and ice conditions. The video is the best evidence of petitioner's speech patterns, his gait, and his demeanor on the date in question. The video also evidences multiple potential fact witnesses on the scene who were not investigated for potential fact witnesses. The video indicates no less than six persons who interacted with petitioner at the scene of the traffic accident, only two of which gave any accounts of their interactions with petitioner.

(*Id.* at PageID 264-80) (citations omitted). The State filed a response in opposition. (*Id.* at PageID 292-314).

On March 23, 2018, the trial court granted Mr. McQuistan's unopposed motion to transfer the matter to the other Medina County Common Pleas Judge. (*Id.* at PageID 315). On April 4, 2018, that judge recused himself from the case. (*Id.* at PageID 316).

On March 23, 2018, Mr. McQuistan also moved for leave to supplement the petition to vacate with an expert report supporting Mr. McQuistan's contention he did apply his brakes prior to the crash. (*Id.* at PageID 317). On May 21, 2018, Mr. McQuistan filed notice of an expert report and affidavit of Attorney Joseph Patituce evaluating trial counsel's performance. (*Id.* at PageID 324). The State moved to strike both expert reports as untimely. (*Id.* at PageID 336). Mr. McQuistan then moved for leave to amend his petition to vacate by attaching Attorney Patituce's expert report and affidavit. (*Id.* at PageID 340).

On June 18, 2018, the Supreme Court of Ohio appointed Judge Robert Brown to preside over the case. (*Id.* at PageID 344). On October 10, 2018, Mr. McQuistan moved for a hearing and a discovery schedule so he could take witness depositions and subpoena evidence to support the claims in his petition to vacate. (*Id.* at PageID 345). On October 31, 2018, the trial court denied the petition to vacate without a hearing. (*Id.* at PageID 350).

On November 29, 2018, Mr. McQuistan, through current habeas counsel, appealed this decision to the Ninth District. (*Id.* at PageID 362). In his brief, filed February 19, 2019, Mr. McQuistan raised the following assignments of error:

1.    The trial court abused its discretion in failing to provide petitioner Mr. McQuistan with a hearing on his petition to vacate.

2.    Trial counsel failed to provide effective assistance of counsel to Mr. McQuistan and such failure prejudiced him.

3.    Mr. McQuistan had a right to a fair and impartial jurist at trial and sentencing.

4.    The indictment in this case violates Mr. McQuistan's Fifth Amendment to the U.S. Constitution's guarantee to indictment by a grand jury in that it fails to indicate on the face of the indictment that the grand jury made a specific finding of probable cause, the indictment in this case fails to include any reference or statement evidencing a finding of probable cause.

(*Id.* at PageID 365). The State filed a brief in opposition. (*Id.* at PageID 414).

On March 14, 2019, the Ninth District struck Mr. McQuistan's brief for noncompliance with Local Rule 7, which establishes general filing requirements. Mr. McQuistan filed a revised brief. (ECF #10-2 at PageID 450). The Ninth District struck non-complying appendix attachments from the brief (*id.* at PageID 583) and affirmed the judgment of the trial court. (*Id.* at PageID 584; *see also State v. McQuistan*, No. 18CA0104-M, 2019 WL 4259042, at *6 (Ohio Ct. App. Sept. 9, 2019) (*McQuistan II*), *appeal not allowed*, 157 Ohio St.3d 1537 (2020)).

On October 28, 2019, Mr. McQuistan, through current habeas counsel, filed a Notice of Appeal to the Ohio Supreme Court. (*Id.* at PageID 597). In his memorandum in support of jurisdiction, Mr. McQuistan raised the following propositions of law:

1.    It is ineffective assistance of counsel to fail to timely file a motion for new trial and fail to file an appropriate challenge of an impartial jurist with the Ohio Supreme Court.

13

2. Appellant was entitled to a hearing and an opening of the civil process permitted in post-conviction relief process after offering substantial evidence and support in both the newly discovered evidence and in the form of multiple expert affidavits.

3. An indictment that does not state on its face a finding of probable cause is defective and void.

4. After multiple criminal counts merge for purposes of sentencing, the defendant may only be convicted on the single remaining count and same single conviction must be clear in the sentencing entry to avoid unfair prejudice to the defendant resulting from multiple convictions.

(*Id.* at PageID 635) (cleaned up). On January 21, 2020, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 667).

**Motions for Judicial Release**

On October 4, 2019, Mr. McQuistan, through current habeas counsel, filed a Motion for Judicial Release. (*Id.* at PageID 668-70). On October 9, 2019, the trial court denied the Motion. (*Id.* at PageID 672). On November 12, 2019, Mr. McQuistan filed his second Motion for Judicial Release. (*Id.* at PageID 673-75). On November 13, 2019, the trial court denied the Motion. (*Id.* at PageID 677). On December 19, 2019, Mr. McQuistan filed his third Motion for Judicial Release.[1] (*Id.* at PageID 678-681).

---

[1] According to Medina County's online docket, the trial court never ruled on Mr. McQuistan's third motion. *See* http://www.co.medina.oh.us/medct_epublicnodr/Default.aspx (last accessed Feb. 9, 2023). The Ohio Department of Rehabilitation and Correction's (ODRC) public offender search function reveals Mr. McQuistan is not currently in the custody of the ODRC though details of his release are not available. *See* http://appgateway.drc.ohio.gov/ OffenderSearch/Search/Results (last accessed Feb. 9, 2023).

## FEDERAL HABEAS CORPUS

Mr. McQuistan, through counsel, filed this petition on March 27, 2020. (ECF #1). Mr.

McQuistan does not clearly articulate his grounds for relief or state the facts that support each

ground as required under Rule 2 of the Rules Governing § 2254 Cases. As best can be discerned

from the petition, Mr. McQuistan raises the following Grounds for Relief:[2]

> **Ground One**: An officer has probable cause to arrest a suspect for operating a vehicle under the influence of alcohol when, based on the totality of circumstances, the officer had sufficient information derived from a reasonably trustworthy source of facts and circumstances to cause a prudent officer to believe the suspect was driving under the influence of alcohol. Did Sergeant Dunbar have probable cause to arrest Keir McQuistan?

> **Ground Two**: In considering the sufficiency of the evidence, the court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. Was there sufficient evidence presented by the State on every element of the offenses of Aggravated Vehicular Assault to support the trial court's judgment of guilty?

> **Ground Three**: To determine whether a judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and considers whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Was the trial court's judgment of guilty against the manifest weight of the evidence.

> **Ground Four**: The trial court should grant a hearing on a motion for new trial based on newly discovered evidence when the motion sets forth affidavits or grounds in support which demonstrate that there is a reasonable probability that the newly discovered evidence would have affected the outcome of the trial.

> **Ground Five**: Petitioner Keir McQuistan has a right to a fair and impartial jurist. In his motion for post-conviction relief, Petitioner challenged that his trial counsel was ineffective in failing to properly challenge the trial court judge's participation in this

---

[2]     Acknowledging that the petition did not clearly articulate any grounds for relief, the State identified Grounds One through Nine. (*See* ECF #10 at PageID 61-63). I have identified two additional claims for the District Court's consideration.

case after hiring the prosecuting attorney to her staff in the time period after trial and prior to sentencing. The trial court initially determined that trial counsel was untimely in filing his motion and failed to appropriately challenge the judge continuing to rule on the case for failure to file appropriate challenge in the Ohio Supreme Court. Likewise, the appellate court also determined trial counsel failed. Subsequently in Petitioner's timely filed petition for post-conviction relief, Petitioner alleged ineffective assistance of counsel for failing to file timely motion and failing to properly challenge the judge's continued participation in the case, as found by both the trial court and the appellate court, and supported by an expert opinion that also found prejudice. With newly assigned trial judge after the original trial counsel recused herself, the trial court determined the issue moot under the principles of res judicata. In a subsequent appeal, the appellate court noted in its decision that the trial court determined the issue moot and failed to further address the assignment of error on appeal.

**Ground Six**: Petitioner Keir McQuistan has a right to an indictment that is free of defects and in this case indicates on its face that the grand jury made a finding of probable cause. The entirely secret Grand Jury process is a substitute process for the open court preliminary hearing process and a finding of probable cause by a qualified and competent magistrate. The finding of probable cause is fundamental to the process and no person may be held without such finding of probable cause. The open court process of a preliminary hearing is subject to various legal challenges. The entirely secret grand jury process must at the very least be subject to the legal challenge that the indictment state on its face that the grand jury made a finding of probable case.

**Ground Seven**: Petitioner Keir McQuistan has a right to the process of post-conviction relief, including the right to a hearing, right to conduct discovery, right to compel witnesses to testify at same hearing, after he clears the procedural hurdles of producing newly discovered evidence not in the prior trial record, coupled with two expert opinions in support of his claims for postconviction relief. Petitioner, without the use of legal proceedings or assistance of civil discovery, provided the trial court with sufficient evidence to clear the gate-keeper functions of the court in screening out legal challenges without any merit. Petitioner provided the court with newly discovered evidence of "black box" data from the vehicle operated by him with an expert opinion interpreting the data and discussing why the black box data was critically important to the trial case. Petitioner also provided the trial court with an expert opinion supporting the claims for ineffective assistance of trial counsel and outlining the prejudice to Petitioner resulting therefrom.

**Ground Eight**: Petitioner Keir McQuistan has a right not to be convicted of multiple counts, if said counts are merged at sentencing. Petitioner challenges the trial court's sentencing entry as void in that it does not clearly and correctly convict him of a single count after the trial court determined that the multiple offense merged.

**Ground Nine**: Petitioner Keir McQuistan has a right to a fair and impartial jurist upon his motion for judicial release and has a right to have his motion for judicial release be determined not by the original trial judge who recused herself and reassigned the case, or by the subsequent judge who recused himself, but by the then duly appointed Honorable Judge Brown who accepted assignment and was assigned authority over the case to make decisions, including the decision to grant or deny judicial release.

**Ground Ten**: Petitioner asserts that in this case, trial counsel failed to reasonably investigate and then to introduce into evidence the electronic recordings of the "black box" in petitioner's F150 pickup truck. The electronic recordings from petitioner's vehicle clearly indicate the following facts: petitioner was traveling the speed limit for a period of 20 seconds prior to the crash; petitioner applied the brakes approximately 2 or 3 seconds prior to impact; petitioner vehicle applied anti-lock braking system (ABS) approximately 2 seconds prior to impact, which indicates that the operator utilized the brake in a hard manner; and, petitioner's vehicle was traveling approximately 13 miles per hour immediately prior to impact.

**Ground Eleven**: Petitioner asserts that in this case, the State of Ohio presented during its case in chief a portion of the only video that is available in this case, a dash cam video from Officer Heidelman of the Seville Police Department. However, there is no indication in the record as to what portion of the video was played during trial. Further, there was no attempt by trial counsel to introduce the video evidence, or that portion which was not placed in the State's case in chief, into evidence in the petitioner's case. Although Officer Heidelman was apparently located out of state at times relevant to the trial, there was no effort to subpoena him back to Ohio to testify in this case or to authenticate the video in this case. There was no effort by trial counsel to authenticate the video with other witnesses or by other means. There was no motion in limine to prohibit the State of Ohio from playing the portion of the video it played. There was a failure to mark the record with which portion of the video was played for purposes of the record and for purposes appeal. Further, trial counsel failed to reasonably investigate other fact witnesses and other video evidence of the traffic accident on the date in question. Further, trial counsel failed to reasonably investigate other video evidence of other traffic accidents on the same date and time, to which there were many, in an effort to substantiate petitioner's claims that the roads were ice and snow covered or that the road conditions were slick. The video clearly indicates a roadway with snow and ice conditions. The video is the best evidence of petitioner's speech patterns, his gait, and his demeanor on the date in question. The video also evidences multiple fact witnesses on the scene who were not investigated for potential fact witnesses. The video indicates no less than six persons who interacted with petitioner at the scene of the traffic accident, only two of which gave any accounts of their interactions with petitioner.

(ECF #1 at PageID 4-5, 7-11, 22-23). Mr. McQuistan requests a hearing. (*Id.* at PageID 23).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. McQuistan's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable

merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state law and state procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and its rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

 The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03. To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears that the petitioner has exhausted available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such state process ineffective to protect the rights of the petitioner. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in which the petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default, discussed more fully below, rather than exhaustion applies. *Id.*

**Procedural Default**. There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default of a claim occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow

the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted by the petitioner failing to raise it in state court and pursue that claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.*

The Supreme Court has stated that "in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas corpus review of a claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). A fundamental miscarriage of justice results from the conviction of one who is "actually innocent." *Murray*, 477 U.S. at 496.

A showing of cause requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise

cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney neglect, ignorance, or inadvertence, however, does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman*, 501 U.S. at 752-755; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A "fundamental miscarriage of justice" occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the

petitioner's trial. *Id.* at 315. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**Claims Not Cognizable on Federal Habeas Review.** The Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause ... safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial."); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v.*

24

*Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

## DISCUSSION AND ANALYSIS

The State asserts the petition should be dismissed because the claims are procedurally defaulted, not cognizable on federal habeas review, or otherwise fail on the merits. Mr. McQuistan did not file a Response to the State's Answer/Return of Writ to clarify the Grounds for Relief he presented in the petition or to offer responses to the State's arguments.

### A. Ground One

In Ground One, Mr. McQuistan questions whether Sergeant Dunbar had probable cause to arrest him for operating a motor vehicle under the influence of alcohol. Mr. McQuistan presented this claim to the Ninth District on direct appeal but did not appeal the Ninth District's decision to the Supreme Court of Ohio. Thus, because he did not fairly present this claim at all levels of the state court's ordinary appellate review process, his claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848 (noting that petitioner's failure to present his federal claims to the state's highest court in a timely fashion constituted procedural default of those claims); *Mosley v. Petro*, No. 5:04CV726, 2006 WL 2640958, at *7 (N.D. Ohio Sept. 13, 2006) ("A petitioner procedurally defaults those claims that he fails to appeal to the Ohio Supreme Court.").

A petitioner can overcome procedural default of a claim by demonstrating cause for the default and actual prejudice resulting therefrom, or by demonstrating that the failure to consider

the claim will result in a fundamental miscarriage of justice, *i.e.*, the conviction of one who is "actually innocent." *Coleman,* 501 U.S. at 749; *Murray,* 477 U.S. at 496. Mr. McQuistan has not asserted any cause for the procedural default or prejudice resulting therefrom, nor has he come forward with new, reliable evidence demonstrating his actual innocence.

Even if the claim was not procedurally defaulted, a Fourth Amendment claim concerning the legality of an arrest is simply not reviewable in federal habeas proceedings. "A habeas petitioner may not seek habeas relief on a claim of illegal arrest if [he] had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (citing *Stone v. Powell*, 428 U.S. 465, 494–95 (1976)). The opportunity for full and fair consideration of a claim means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure used to resolve that particular claim. *Good v. Berghuis,* 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied,* 574 U.S. 1137 (2015). Here, Mr. McQuistan had that opportunity, and indeed, received an evidentiary hearing on his motion to suppress based on his assertion that the arresting officer lacked probable cause to arrest, an argument the trial court rejected. (*See* ECF #10-1 at PageID 101-02). He presented the claim again to the Ninth District, which rejected it once more. Under *Stone v. Powell,* this suffices to preclude review of this claim through a habeas corpus petition.

I recommend Ground One be dismissed as procedurally defaulted and otherwise not cognizable.

26

B.      **Ground Two**

In Ground Two, Mr. McQuistan questions whether sufficient evidence supported his

conviction for aggravated vehicular assault. Ground Two is similarly procedurally defaulted. As in

Ground One, Mr. McQuistan presented this claim to the Ninth District but did not appeal that

decision to the Supreme Court of Ohio. *See Mosley,* 2006 WL 2640958, at *7 ("A petitioner

procedurally defaults those claims that he fails to appeal to the Ohio Supreme Court."). Therefore,

Ground Two is procedurally defaulted. Further, Mr. McQuistan has not asserted any cause for the

procedural default or prejudice resulting therefrom, nor has he come forward with new, reliable

evidence demonstrating his actual innocence.

To the extent Mr. McQuistan claims the crash data from his vehicle's "black box" is new,

reliable evidence demonstrating his actual innocence, the argument is unpersuasive. As more

thoroughly discussed below, the evidence does not demonstrate actual innocence; rather, the crash

data, which indicates there was a very short period of time between the application of the brakes

and the collision, suggests a delayed reaction, which supports the State's trial theory that Mr.

McQuistan's intoxication caused the collision.

Even if Mr. McQuistan has not procedurally defaulted this claim in the state courts, it still

fails on the merits. The Fourteenth Amendment's due process protections provide that "no person

shall be made to suffer the onus of a criminal conviction except upon sufficient proof." *Jackson v.

Virginia,* 443 U.S. 307, 316 (1979). Therefore, challenges to a state court conviction based on the

sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *Id.* at 321.

The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary

to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). In *Jackson,* the

27

Supreme Court established the standard by which constitutional claims challenging the sufficiency of the evidence are reviewed:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

443 U.S. at 319. Otherwise stated, a petitioner is entitled to habeas corpus relief if, based on the record evidence at trial and in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id*. at 324.

On federal habeas review of claims challenging the sufficiency of the evidence, reviewing courts are bound by two layers of deference. First, in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the court does not reweigh the evidence, reevaluate the credibility of witnesses, or otherwise substitute its opinion for that of the trier of fact. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *United States v. Hilliard*, 11 F.3d 618 (6th Cir. 1993). Thus, even if the federal court might not agree with the trier of fact's decision to convict, it must uphold the determination if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *Id*. The second layer of deference, required by AEDPA, extends to the state appellate court's determination as long as it is not unreasonable. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008); *see also* 28 U.S.C. § 2254(d)(2).

Relief is available under § 2254(d)(1)'s unreasonable-application clause "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (quoting

*Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The state court's application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Smith v. Nagy*, 962 F.3d 192, 199 (6th Cir. 2020) (quoting *Woodall*, 572 U.S. at 419).

On direct appeal, the Ninth District analyzed the claim as follows:

When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.*

A vehicular assault occurs if an individual recklessly causes serious physical harm to another while driving a motor vehicle. R.C. 2903.08(A)(2)(b). Meanwhile, an aggravated vehicular assault occurs if an individual causes serious physical harm to another (1) while driving a motor vehicle, and (2) "[a]s the proximate result of committing a violation of [R.C. 4511.19(A) ] * * *." R.C. 2903.08(A)(1)(a). "R.C. 4511.19 prohibits operating a motor vehicle while under the influence of alcohol or drugs." "'A driver * * * is considered 'under the influence' of alcohol when his 'physical and mental ability to act and react are altered from the normal because of the consumption of alcohol.'" "[T]he [S]tate does not have to prove actual impaired driving; rather, it need only show an impaired driving ability." As noted, to sustain a conviction, the State may rely on a number of "'physiological factors,'" as well as lay opinion testimony that an individual was intoxicated.

McQuistan does not dispute that the accident he caused resulted in serious physical harm to one of the occupants of the car he struck. Specifically, the rear seat passenger, who was five years old at the time, suffered a skull fracture and had to undergo emergency surgery. McQuistan's argument is strictly that the State failed to prove he was under the influence of alcohol when he caused the accident. As such, we limit our review to that issue.

The driver of the car that McQuistan struck testified that, on the evening of the accident, he was stopped on Greenwich Road, waiting to make a left-hand turn onto Hubbard Valley Road. His fiancée was seated next to him and his five-year-old son was seated directly behind him. He testified that it was cold that day, but the roads were clear, having been plowed and salted. He estimated that his car remained

stationary for between thirty seconds and one minute as he waited for an opportunity to turn. He then briefly noticed headlights in his rearview mirror before a vehicle struck his car from behind and pushed it through the intersection and into a ditch on the other side of Hubbard Valley Road. Both the driver and his fiancée denied hearing any noise resembling tires squealing on the pavement or braking directly before the crash occurred.

The driver identified McQuistan as the driver of the vehicle that struck his car. He stated that, while he tended to his family, McQuistan remained in his vehicle. He then saw McQuistan step out of his vehicle and begin walking towards him. Because McQuistan's vehicle was located several hundred feet away, the driver also began walking so as to meet McQuistan halfway. The driver testified that McQuistan had his cell phone out while walking and was looking at it rather than making eye contact. As the two converged, McQuistan immediately demanded to know why the driver had been stopped in the middle of the road. The driver testified that it was difficult to understand McQuistan because his speech was slurred. He also testified that McQuistan's lack of concern angered him, so he responded in disbelief and may have used an expletive. According to the driver, McQuistan then mumbled something, turned away, walked back to the rear passenger bumper of his vehicle, and urinated on the side of the road. The driver testified that McQuistan's actions, in conjunction with his slurred speech, caused him to believe that McQuistan was impaired.

Ohio State Highway Patrol Trooper Aleksander Tot responded to the scene of the accident. He testified that McQuistan was seated in his vehicle when he arrived, having already given his driver's license information to a local officer. Trooper Tot testified that he approached McQuistan's vehicle and asked him what happened. According to the trooper, McQuistan refused to respond or answer any of his questions. He testified that McQuistan had bloodshot and glassy eyes and the odor of an alcoholic beverage was coming from his person. He further testified that McQuistan was unsteady on his feet, as evidenced by the fact that he bumped into Trooper Tot as the two walked to his cruiser. Though Trooper Tot asked McQuistan to perform field sobriety testing, McQuistan refused to look at the stimulus for the horizontal gaze nystagmus test or participate in any of the other tests. Trooper Tot testified that, instead, McQuistan looked directly at him and "stare[d] like he was going to fight."

With regard to the accident itself, Trooper Tot testified that he documented the scene and inspected the damage to both vehicles. He stated that both vehicles were damaged at their center points, meaning that McQuistan had struck the driver's car straight on without attempting to swerve or take "any evasive actions to avoid the crash." Likewise, he stated that there was no evidence of any tire marks on the road that might have shown an attempt at stopping.

Sergeant Dunbar testified that he arrived at the scene of the accident after Trooper Tot and conferred with him on arrival. He then attempted to speak with McQuistan, but only received a "slurred garbled" response. Sergeant Dunbar testified that McQuistan had red, glassy eyes and that there was a strong odor of alcohol coming from his person. He stated that McQuistan refused to engage in field sobriety testing or answer when asked if he had consumed any alcohol. After McQuistan was arrested and transported back to the station, he also refused to take a breath test, stating that he "did not trust the machine." Sergeant Dunbar testified that McQuistan's speech was still slurred at that time. Though he refused to take the breath test, McQuistan ultimately admitted to having consumed one beer earlier that day. Sergeant Dunbar testified that McQuistan's speech, appearance, and behavior were all consistent with impairment.

As to the road conditions that day, Sergeant Dunbar testified that he had no difficulty controlling his cruiser when traveling on Greenwich Road. He testified that there was snow on the sides of the road, but the road itself was clear. Moreover, photographs that the State produced at trial showed the road was clear of snow. There was testimony that Greenwich Road runs straight for a considerable distance and has a slight downhill grade as it intersects with Hubbard Valley Road. Accordingly, there was evidence that there were no curves in the road or hills that would have obstructed McQuistan's line of sight.

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved McQuistan was impaired at the time of the accident. More than one witness testified that he appeared to be impaired. There was evidence that his eyes were red and glassy, he was unsteady on his feet, he had slurred speech, he smelled strongly of alcohol, and he admitted consuming at least one alcoholic beverage. There was evidence that he refused to submit to a breath test. Additionally, there was evidence that he failed to react before striking the other driver's car, despite having a clear line of sight. Based on all of the foregoing evidence, a rational trier of fact could have concluded that McQuistan caused an accident as a proximate result of operating his vehicle while under the influence of alcohol. As such, we must conclude that his conviction for aggravated vehicular assault is based on sufficient evidence. Likewise, we must conclude that his conviction for vehicular assault is based on sufficient evidence, as driving while impaired also constitutes reckless behavior. McQuistan's second assignment of error is overruled.

*McQuistan I,* 2018 WL 828748, at *3-6 (emphasis added, citation omitted).

The Ninth District identified and reasonably applied the *Jackson* standard to Mr.

McQuistan's sufficiency of the evidence claim and concluded sufficient evidence supported the

sole challenged essential element of both aggravated vehicular assault and vehicular assault – *viz.,*

31

whether he was under the influence of alcohol when he caused the accident. Mr. McQuistan has not attempted to show the Ninth District's application of the standard was an objectively unreasonable application of *Jackson* or based on an unreasonable determination of the facts based on the evidence presented.

I recommend Ground Two be dismissed as procedurally defaulted and otherwise meritless.

## C.     Ground Three

In Ground Three, Mr. McQuistan questions whether the trial court's judgment was against the manifest weight of the evidence. It is well settled that claims regarding the manifest weight of the evidence are grounded in state law and therefore not cognizable on federal habeas. *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (noting that Due Process clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt).

Therefore, I recommend his manifest weight claim be dismissed as not cognizable on federal habeas review.

## D.     Grounds Four and Five

Grounds Four and Five are based on the same set of facts: following trial, but before sentencing him, Mr. McQuistan, through trial counsel, filed a motion to vacate the verdict and grant a new trial. The motion for new trial and the later request that the trial judge recuse herself were based on the post-trial decision of the trial judge to hire as her magistrate the attorney who prosecuted Mr. McQuistan.

32

1.    *Ground Four*

As to Ground Four, Mr. McQuistan argues the trial court should have granted a hearing

on his motion for new trial based on newly discovered evidence where the motion set forth

affidavits or grounds in support demonstrating there was a reasonable probability that the newly

discovered evidence would have affected the outcome of the trial. To the Ninth District, Mr.

McQuistan argued the trial court abused its discretion when it denied his motion for a new trial

under Rule 33 of the Ohio Rules of Criminal Procedure without a hearing and refused to recuse

herself from the case, claiming "[t]he trial court's hiring of the assistant prosecutor at the very least

created an appearance of impropriety and that he had been prejudiced by the relationship." (ECF

#10-1 at PageID 161-62). The "newly discovered evidence" Mr. McQuistan cited to support his

motion is the trial judge's post-trial decision to hire as her magistrate the attorney who handled the

prosecution against him. (*Id.* at PageID 162).

Ground Four is procedurally defaulted based on Mr. McQuistan's failure to pursue his

claims through Ohio's ordinary appellate review procedures. *See Williams,* 460 F.3d at 806 (citing

*O'Sullivan,* 526 U.S. at 848); *see also Baston,* 282 F. Supp. 2d at 661. Mr. McQuistan presented this

claim on direct appeal to the Ninth District but failed to appeal the Ninth District's judgment to

the Supreme Court of Ohio. Mr. McQuistan has not asserted any cause for the procedural default

or prejudice resulting therefrom, nor has he come forward with new, reliable evidence

demonstrating his actual innocence.

Moreover, Mr. McQuistan alleges a violation of state law; namely, the court abused its

discretion in not granting a new trial. A claim alleging only a violation of state law is not

cognizable in federal habeas proceeding and must be dismissed on that basis unless the state

court's state-law ruling violates a fundamental federal constitutional right. *See Estelle*, 502 U.S. at 68 ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). State-court rulings on issues of state law may rise to the level of due process violations if they "'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious" that they deny "fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Courts, therefore, "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*

Mr. McQuistan contends the trial judge's hiring of the assistant prosecuting attorney as her magistrate after the completion of his trial entitles him to a new trial because the employment decision shows at least "an appearance of impropriety." (ECF #1 at PageID 13). But "[t]he floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (cleaned up). Under this standard, "[o]nly in the most extreme cases would disqualification on the basis of bias and prejudice be constitutionally required." *Williams*, 460 F.3d at 814 (quotation omitted). "The inquiry [for judicial bias] is an

objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 881 (2009). However, a judge is presumed to be impartial, and a party seeking to establish bias bears the burden of overcoming that presumption. *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013). As the Supreme Court has held, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Significantly, and as the Ninth District noted, Mr. McQuistan points to nothing that evidences actual bias on the part of the trial judge; rather, his claim rests entirely on conjecture and speculation. *See McQuistan II*, 2019 WL 4259042, at *6. Without evidence of actual bias against him, Mr. McQuistan has failed to establish any constitutional due process violation, much less one so egregious that it results in a denial of fundamental fairness. *See Bugh*, 329 F.3d at 512.

I recommend this claim be dismissed as procedurally defaulted or otherwise without merit.

2.    *Ground Five*

In Ground Five, Mr. McQuistan contends trial counsel was ineffective for not properly challenging the trial judge's continued participation in the case after hiring the assistant prosecuting attorney as a magistrate.

To establish ineffective assistance of counsel under the Sixth Amendment, a petitioner must show his counsel performed deficiently and he suffered prejudice as a result. *Strickland*, 466 U.S. at 687. To show deficiency, the petitioner must demonstrate that counsel's representation fell

35

below an objective standard of reasonableness under the then-existing circumstances and as judged by "prevailing professional norms." *Id.* at 687-89. Counsel's strategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689-90. A court may not find ineffective assistance where the petitioner fails to overcome the presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689.

To establish prejudice, a petitioner must prove a "reasonable probability" exists that, but for counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. Reasonable probability requires a showing of substantial effect on the outcome of the proceedings, not just "some conceivable" effect. *Id.* at 693. To obtain federal habeas corpus relief after the state courts reject an ineffective assistance of counsel claim, a petitioner must show the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of facts. 28 U.S.C. § 2254(d).

The Ninth District addressed Mr. McQuistan's ineffective assistance of counsel claims as follows:

> Mr. McQuistan's final allegations of ineffective assistance of counsel were pleaded in his second claim for relief, in which he alleged that trial counsel failed to file a timely motion for a new trial and failed to file an affidavit of disqualification of the judge who presided over the trial. Both of these assertions are based on Mr. McQuistan's allegation that his trial was tainted because "[t]he trial court ruled on petitioners' post-trial motions and sentenced petitioner after having hired the State of Ohio's trial counsel as a magistrate on her office staff, creating at the very least an appearance of impropriety and bias against petitioner." Mr. McQuistan first raised this allegation in a motion that he filed in the trial court on December 29, 2016. This Court considered the denial of that motion in his direct appeal and concluded that even if

36

considered on its merits, the motion failed to demonstrate that he was entitled to a new trial. Because this Court previously determined that Mr. McQuistan could not have prevailed on his motion even if it was considered as a timely motion for a new trial, the trial court's conclusion that he has not demonstrated ineffective assistance of counsel was not an abuse of discretion.

The trial court also did not abuse its discretion by dismissing Mr. McQuistan's second claim for relief to the extent that he argued trial counsel was ineffective by failing to file an affidavit of disqualification with the Ohio Supreme Court. As this Court noted in Mr. McQuistan's direct appeal, the exclusive remedy for a defendant who alleges that the trial judge should have recused herself is to file an affidavit of disqualification with the Supreme Court, as provided by R.C. 2701.03. The decision not to file an affidavit of disqualification falls within the ambit of trial tactics.

Mr. McQuistan did not identify any evidence of bias on the part of the trial court. He did not support his allegation that trial counsel erred by failing to file an affidavit of disqualification, nor did he explain how there is a reasonable possibility that the outcome of the trial would have been different had trial counsel done so. In other words, this allegation of ineffective assistance of counsel rested solely on conjecture and speculation, and the trial court did not err by dismissing it.

*McQuistan II*, 2019 WL 4259042, at *5-6 (citations omitted).

Mr. McQuistan has not shown or even argued that he is entitled to relief under § 2254(d). As to Mr. McQuistan's claim that his counsel was ineffective for not timely filing a motion for new trial, the Ninth District reasonably determined Mr. McQuistan had not established that the untimeliness of the motion prejudiced him. Indeed, the trial court acknowledged the untimeliness of the motion but ultimately concluded, "[u]pon a review of the evidence as set forth above, the court does not find that there is a strong probability that a new trial will result in a different verdict. Defendant's motion to vacate the verdict and grant a new trial is hereby denied." (ECF # 10-1 at PageID 119). Even if counsel had filed the motion on time, it still fails on the merits; therefore, Mr. McQuistan's ineffective assistance of counsel claim fails because he cannot establish prejudice. This is a reasonable application of the *Strickland* standard. *See Strickland*, 466 U.S. at 688 (petitioner must establish prejudice to bring a successful ineffective assistance of counsel claim).

The Ninth District also reasonably concluded trial counsel was not ineffective for failing to file an affidavit of disqualification with the Supreme Court of Ohio. The Ninth District cited Mr. McQuistan's failure to identify any evidence of bias on the part of the trial judge and determined that the allegation of ineffective assistance of counsel on the basis of counsel's failure to file an affidavit of disqualification rested solely on conjecture and speculation of judicial bias. As above, Mr. McQuistan could not establish actual bias. The failure to raise a meritless claim does not constitute ineffective assistance of counsel. *See, e.g., Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

I recommend Ground Five be dismissed as meritless.

## E.     Ground Six

Mr. McQuistan believes the state court indictments were defective because they did not specifically state they were issued on findings of probable cause. It is well settled that there is no federal constitutional right to an indictment in state criminal proceedings. *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). The Constitution does not require any particular state indictment rule, and indeed, it does not require an indictment at all if sufficient notice of the charge is given in some other manner. *Combs v. Tennessee*, 530 F.2d 695, 699 (6th Cir.), *cert. denied*, 425 U.S. 954 (1976). Fair notice of the charge requires the offense to be "described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Koontz*, 731 F.2d at 369. Moreover, "it has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to

answer.'" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (quoting *Ex Parte United States*, 287 U.S. 241, 250 (1932)).

Nevertheless, even if Mr. McQuistan had alleged a federal constitutional violation in connection with the indictment, the claim is procedurally defaulted due to Mr. McQuistan's failure to comply with a state procedural rule. *See Maupin*, 785 F.2d at 138. The trial court noted Mr. McQuistan did not present this claim to the state courts on direct appeal but first raised it in the trial court in his post-conviction petition to vacate. The trial court determined the claim, based on an allegedly defective indictment, "is barred by res judicata because it challenges something in the record and could have been raised in [Mr.] McQuistan's direct appeal." (ECF #10-1 at PageID 357). On appeal from the trial court's dismissal of his petition to vacate, the Ninth District declined to address the defective indictment claim as barred by res judicata. *McQuistan II*, 2019 WL 4259042, at *2.

Applying the *Maupin* factors, Mr. McQuistan is precluded from asserting Ground Six based on res judicata. The doctrine of res judicata, a state procedural rule, "provides in relevant part that a final judgment of conviction bars a convicted defendant from raising in any proceeding, except an appeal from that judgment, any issue that was raised, or could have been raised, at trial or on appeal from that judgment. *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) (citing *State v. Perry*, 226 N.E.2d 104 (1967)). Under the first *Maupin* prong, this procedural rule is applicable to Mr. McQuistan's defective indictment claim and he failed to comply with the rule because he did not bring the claim on direct appeal. Second, the state courts enforced the state procedural rule when they declined to address the claim as barred by res judicata. Third, Ohio's doctrine of res judicata has consistently been held to be an adequate and independent ground on which the state

39

can foreclose review of a federal constitutional claim. *See Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (deeming Ohio's doctrine of res judicata an adequate and independent state procedural ground); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (holding that "Ohio's doctrine of res judicata as a procedural bar is regularly applied by the Ohio courts"). Fourth, Mr. McQuistan does not assert cause for his failure to follow the procedural rule, nor does he claim actual prejudice resulting from the alleged constitutional error. Therefore, this claim is procedurally defaulted. Mr. McQuistan has not asserted any cause for the procedural default or prejudice resulting therefrom, nor has he come forward with new, reliable evidence demonstrating his actual innocence.

I conclude that Ground Six should be dismissed as procedurally defaulted and not otherwise cognizable on federal habeas review.

## F.    Ground Seven

In Ground Seven, Mr. McQuistan alleges the trial court wrongly denied him his right to the post-conviction process, including his right to a hearing, conduct discovery, and compel witnesses, after he produced newly discovered evidence (black box data from his vehicle during the collision) and expert opinions. (ECF #1 at PageID 9). His claim attacks the state court's handling of his motion for post-conviction relief—a collateral matter—rather than the underlying state conviction.

According to Mr. McQuistan, the electronic readings of the black box show he was traveling the speed limit for a period of 20 seconds prior to the crash; applied the brakes approximately 2 or 3 seconds prior to impact; the vehicle employed the anti-lock braking system approximately 2 seconds prior to impact, which indicates he used the brake in a hard manner; and was traveling at approximately 13 miles per hour immediately prior to impact. (ECF #1 at PageID

11-12). He additionally claims his trial counsel was ineffective for not reasonably investigating and introducing this evidence at trial. (*Id.* at PageID 12).

The Sixth Circuit has consistently held that errors in state court post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *see also Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002). Claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.") (citation omitted). "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement." *Kirby*, 794 F.2d at 248. Accordingly, the Sixth Circuit has held repeatedly that the writ of habeas corpus is not the proper means to challenge collateral matters, such as deficiencies in state post-conviction proceedings; rather, the writ is intended to be a vehicle to challenge the underlying state conviction giving rise to the incarceration. *Id.* at 247-48; *see also Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (noting that "habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief"); *Alley v. Bell*, 307 F.3d 380, 386-87 (6th Cir. 2002) (observing that "error committed during state post-conviction proceedings cannot provide the basis for federal habeas relief").

41

Mr. McQuistan alleges the trial court should have granted him the right to a hearing, engage in discovery, and compel witnesses because he submitted "sufficient evidence to clear the gate-keeper functions of the court in screening out legal challenges without merit." (ECF #1 at PageID 9). His challenge squarely attacks the deficiencies in the state post-conviction proceedings and is therefore not cognizable on federal habeas review.

I recommend Ground Seven be dismissed as not cognizable.

**G.**     **Ground Eight**

In Ground Eight, Mr. McQuistan claims he has a right to not be convicted of multiple counts if the counts are merged at sentencing. (ECF #1 at PageID 10). Mr. McQuistan first asserted this sentencing error claim to the Supreme Court of Ohio in his appeal of the Ninth District's decision affirming the trial court's dismissal of his motion for post-conviction relief. Mr. McQuistan never fairly presented this claim to the state courts on direct appeal. The claim, based on an alleged sentencing error, arose from the trial record and should have been raised on direct appeal. The claim has never been considered or adjudicated on the merits in the state courts. Therefore, this claim is procedurally defaulted for purposes of federal habeas review. Mr. McQuistan has not asserted any cause for the procedural default or prejudice resulting therefrom, nor has he come forward with new, reliable evidence demonstrating his actual innocence.

Even if not procedurally defaulted, the claim is meritless. It evidences a fundamental misunderstanding of the Fifth Amendment protections afforded against double jeopardy and the statutory protections in Ohio's sentencing structure designed to protect the same rights.

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal," "against a second prosecution for the same offense after conviction," and "against

multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Multiple counts are addressed in Ohio Rev. Code § 2941.25, which states, "[w]here the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. § 2945.25(A). According to the Supreme Court of Ohio, "for purposes of R.C. 2941.25(A), a conviction is a determination of guilt and the ensuing sentence." *State v. Whitfield*, 922 N.E.2d 182, 186 (Ohio 2010). That a defendant may be "convicted" of only one allied offense is a protection against multiple sentences rather than multiple convictions. *Id.* at 323; *see, e.g., Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (recognizing that the Double Jeopardy Clause protects against successive prosecutions and against multiple punishments for the same offense). To ensure there are not improper cumulative punishments for allied offenses, courts must be cognizant that Ohio Rev. Code § 2941.25(A) requires that "the trial court effects the merger at sentencing." *State v. Gapen*, 819 N.E.2d 1047, 1071 (Ohio 2004).

To the extent Mr. McQuistan's petition can be construed as making a claim that the trial court violated his Fifth Amendment right against double jeopardy, his arguments are not persuasive. After trial, the court found Mr. McQuistan guilty of aggravated vehicular assault in violation of Ohio Rev. Code § 2903.08(A)(1)(a) and of vehicular assault in violation of Ohio Rev. Code § 2903.08(A)(2)(b). (ECF #10-1 at PageID 105). At Mr. McQuistan's sentencing hearing, the prosecutor recognized the two counts were allied offenses of similar import and elected to proceed with sentencing on the aggravated vehicular assault conviction. (ECF #10-9 at PageID 1784). The trial court stated it found that Mr. McQuistan did drive under the influence of alcohol and caused a car accident that resulted in serious injury to the victim (*i.e.*, aggravated vehicle assault in

violation of Ohio Rev. Code § 2903.08) and imposed a single sentence of three years. (*Id.* at PageID 1795). The trial court did not impose any imprisonment on Mr. McQuistan as a result of the conviction for vehicular assault. The sentencing judgment entry reflects the trial court found Mr. McQuistan guilty of aggravated vehicular assault and vehicular assault, determined the convictions were allied offenses of similar import, noted the State's election to sentence Mr. McQuistan on the aggravated count, and imposed a single sentence of three years. (ECF #10-1 at PageID 120-21). The sentencing entry shows Mr. McQuistan was properly sentenced on just the aggravated vehicular assault conviction and therefore the trial court did not violate his constitutional right under the Fifth Amendment to be free from multiple punishments for the same offense.

I recommend Ground Eight be dismissed as procedurally defaulted and otherwise without merit.

**H.      Ground Nine**

In Ground Nine, Mr. McQuistan asserts he has a right to have a fair and impartial judge decide his post-conviction motions for judicial release. Challenges to the denial of a motion for judicial release are not cognizable on federal habeas review because there is no federal constitutional right to early judicial release. *See, e.g., Deeb v. James,* No. 3:16 CV 2632, 2018 WL 3659063, *4 (N.D. Ohio Aug. 2, 2018); *Love v. Ficano,* 19 F. Supp. 2d 754, 764 (E.D. Mich. Sept. 10, 1998) (noting "there is no federal constitutional right to release on parole. However, once a prisoner has been *granted* release on parole, a protected liberty interest is created which cannot be taken away without due process of law.") (citing *Morrissey v. Brewer,* 408 U.S. 471, 480-82 (1972)). Moreover, as explained above, Mr. McQuistan's conclusory and speculative assertion that the trial

44

judge was biased because she hired the assistant prosecuting attorney as her magistrate after the trial but before sentencing is not sufficient to overcome the presumption that a judge is impartial.

I recommend Ground Nine be dismissed as non-cognizable and otherwise without merit.

## I.  Grounds Ten and Eleven

In Ground Ten, Mr. McQuistan asserts trial counsel did not reasonably investigate and introduce crash data evidence showing he was traveling the speed limit for 20 seconds prior to the crash, applied the brakes 2 to 3 seconds before impact, and was traveling 13 mph just before impact. (ECF #1 at PageID 11). He argues the engagement of the anti-lock braking system indicates he used his brakes "in a hard manner." (*Id.* at PageID 11-12). In Ground Eleven, Mr. McQuistan asserts trial counsel failed to investigate whether there were other fact witnesses present at the scene of the accident and whether there were other accidents in the vicinity on the date in question that could be attributed to weather conditions, and was ineffective in connection with a dashboard camera video obtained from one of the officers who responded to the crash scene. (*Id.* at PageID 22-23). Mr. McQuistan first raised these claims to the trial court in his post-conviction petition to vacate and again on appeal to the Ninth District.

In *McQuistan II,* the Ninth District assessed these claims as follows:

> Each of these arguments relates to the same question at issue at trial: whether Mr. McQuistan caused serious physical harm to B.R. as the proximate result of driving under the influence of alcohol.

> When a defendant challenges the effectiveness of trial counsel based on decisions regarding the scope of investigation in support of the defense, courts presume that the decisions made by counsel amount to sound trial strategy under the circumstances. Consequently, courts must be mindful that "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." As the Supreme Court noted in *Strickland*,

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Id.* at 690-691.

In support of his first claim for relief, Mr. McQuistan filed an eleven-page document that purported to be crash data obtained from his vehicle. Shortly thereafter, he filed an affidavit by Andrew S. Rich, an accident reconstructionist who interpreted the crash data to determine the speed of Mr. McQuistan's vehicle at impact and the timeframe during which Mr. McQuistan applied the brakes. He also filed an expert report authored by Attorney Joseph C. Patituce regarding whether trial counsel's performance fell below a standard of objective reasonableness. It is important to note, however, that the evidence submitted by Mr. McQuistan does not actually demonstrate that counsel failed to investigate the crash data.

With respect to the investigation and introduction of the crash data report, the trial court concluded that trial counsel's decision "was classic trial strategy that cannot and should not be second-guessed[.]" The trial court determined that the crash data demonstrated that Mr. McQuistan did not apply his brakes "until the very last second or two" before impact, noting that only two seconds before the collision, Mr. McQuistan's vehicle was traveling 55 miles per hour. The trial court also noted that trial counsel's defense strategy was to challenge the State's evidence tending to demonstrate that Mr. McQuistan was driving under the influence of alcohol at the time of the crash and concluded that "[t]he idea that [Mr.] McQuistan may have applied the brakes two seconds prior to impact would not change the evidence that [Mr.] McQuistan was at fault in causing the accident. It also would not change the evidence that [Mr.] McQuistan was under the influence of alcohol and would not change the fact that [Mr.] McQuistan caused serious physical harm to [B.R.]."

The trial court's conclusion that neither the crash data report itself nor the corresponding affidavit of Andrew S. Rich set forth sufficient operative facts to establish substantive grounds for relief does not reflect an abuse of discretion. The State's theory of the case at trial was that the observations of first responders and the mechanics of the accident itself demonstrated that Mr. McQuistan was under the influence of alcohol. As the trial court noted, trial counsel's defense strategy was to challenge that theory.

To that end, counsel introduced evidence that contradicted the State's witnesses, who testified that the roadway was only partially covered with snow and treated with

46

salt or brine. J.R., for example, testified that after snowfall earlier in the day, the roads had been plowed and salted, and there were no problems with driving conditions before the accident. In contrast, Mr. McQuistan and his wife testified that road conditions were poor and driving was hazardous. J.R. testified that the elevation of Greenwich Road is at its maximum as you leave Seville and, from that vantage point, a driver can see clearly down the rest of the slope to the intersection of Hubbard Valley Road approximately a mile away. On the other hand, Mr. McQuistan testified that there is a second small incline near the bottom of Greenwich Road and that he was surprised to see J.R.'s vehicle stopped at the intersection. He also testified that he saw the sedan three to five seconds before impact and applied the brakes aggressively, but obtained no traction.

The crash data, as the trial court noted, does not support Mr. McQuistan's testimony, nor does it tend to demonstrate that the accident was caused not by his intoxication, but by road conditions and geography. According to Mr. Rich's interpretation of the data, there was no evidence that Mr. McQuistan's vehicle veered from a straight line of travel. The data also indicated that Mr. McQuistan was traveling between 38 to 45 miles per hour at the moment of impact. Mr. Rich explained that the brakes were applied only 1.0-1.2 seconds before impact and that the antilock braking mechanism engaged only .08-.06 seconds before impact.

The crash data does not tend to disprove that Mr. McQuistan was under the influence of alcohol, and it could, in fact, support the inference that his delayed reaction time was further evidence of impairment. The trial court did not abuse its discretion by concluding that the decision not to rely on such evidence was an element of trial strategy. As such, the trial court did not err by concluding that Mr. McQuistan's first claim for relief did not set forth alleged sufficient operative facts that would establish substantive grounds for relief and dismissing that claim without a hearing.

Portions of Mr. McQuistan's second and fourth claims for relief also allege that trial counsel was ineffective by virtue of failing to investigate the potential testimony of other witnesses at the crash scene and whether video evidence of this crash scene or other crash scenes depicted driving conditions on the date in question. Mr. McQuistan has not identified any such evidence that actually exists, nor has he referenced the testimony that any specific witness might provide in his defense. "Conjecture built upon insufficiently supported speculation does not establish substantive grounds entitling a defendant to postconviction relief."

Portions of Mr. McQuistan's fourth claim for relief argued that trial counsel was ineffective in connection with State's Exhibit 14, a dashboard camera video obtained from one of the officers who responded to the accident scene. The State played portions of the video during its cross-examination of Mr. McQuistan over trial counsel's objection. In his fourth claim for relief, Mr. McQuistan took contradictory

positions: that trial counsel should have filed a motion in limine to exclude the video entirely and that trial counsel should have introduced the entire video into evidence. He also argued that trial counsel failed to ensure that the record contained references to the specific portions of the video that were played at trial.

In reviewing the fourth claim for relief, the trial court found that the video, as a whole, was harmful to the defense rather than helpful and that trial counsel's decision reflected sound trial strategy. The conclusion that this portion of the fourth claim for relief did not set forth sufficient operative facts demonstrating substantive grounds for relief was not an abuse of discretion. Moreover, this Court notes that State's Exhibit 14 was part of the record on appeal. Mr. McQuistan could have argued ineffective assistance of counsel with respect to this exhibit in his direct appeal, so these aspects of his fourth claim for relief are barred by application of the doctrine of res judicata.)

*McQuistan II*, 2019 WL 4259042 at \*3-5 (citations omitted).

The Ninth District's adjudication of Ground Ten did not result in a decision that was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor did it result in a decision based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding, as required for a court to grant a writ of habeas corpus under § 2254(d). The Ninth District reasonably determined the crash data would have been unhelpful to the defense in light of counsel's strategy to challenge the State's theory that the accident resulted from Mr. McQuistan's intoxication. The crash data did not support Mr. McQuistan's own testimony and, moreover, evidence that Mr. McQuistan delayed applying his brakes until just one to two seconds before impact is further evidence of impairment. Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

The portion of Ground Eleven asserting ineffective assistance of counsel in connection with the dashboard camera recording is procedurally defaulted because Mr. McQuistan failed to comply with a state procedural rule. *See Maupin*, 785 F.2d at 138. The doctrine of res judicata,

described above, applies here. Mr. McQuistan did not comply with the rule because he failed to present the claim on direct appeal. In *McQuistan II,* the Ninth District enforced the procedural rule when it declined to address the claim as barred by res judicata. *McQuistan II,* 2019 WL 4259042 at *5. Ohio's doctrine of res judicata has consistently been held to be an adequate and independent ground on which the state can foreclose review of a federal constitutional claim. *See Monzo,* 281 F.3d at 577. Finally, Mr. McQuistan does not assert cause for his failure to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. Therefore, this claim is procedurally defaulted.

Even if not procedurally defaulted, Mr. McQuistan cannot succeed on the merits of any of the claims in Ground Eleven. To support his claim that counsel failed to investigate potential fact witnesses, Mr. McQuistan points to the dashboard video recording which "indicates no less than six persons who interacted" with him at the scene, "only two of which gave any accounts of their interactions with petitioner." (ECF #10-2 at PageID 479). The Ninth District noted Mr. McQuistan did not reference testimony any specific witness might provide in his defense. To succeed on his claim, Mr. McQuistan must show that there is a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. Because Mr. McQuistan fails to show how presenting of any of the unidentified people in the video as witnesses at trial would have made any difference in the outcome, his claim fails on the merits. *See Krug v. Kelly,* No. 1:11CV0074, 2013 WL 2351848, *11 (N.D. Ohio May 24, 2013). Likewise, Mr. McQuistan's claim that his counsel was ineffective for failing to investigate whether other video evidence of this crash scene or other crash scenes depicted driving conditions on the date of the collision is meritless. As the Ninth District recognized, Mr.

McQuistan has not identified any such evidence that actually exists. Moreover, even if other evidence did exist that indicated road conditions were slick, Mr. McQuistan cannot show that presenting such evidence would have changed the outcome of the trial. Even if conditions were slick, evidence of the road conditions does not detract from the other overwhelming evidence establishing that Mr. McQuistan was intoxicated at the time of the collision, including observations from Sergeant Dunbar that Mr. McQuistan's speech was slurred and that he gave off a strong order of alcohol, refused to answer when asked whether he consumed alcohol, and refused to engage in sobriety testing. Even if counsel did present evidence of the slick road conditions, Mr. McQuistan simply cannot show that such evidence would have any effect on the outcome of the trial.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

As to the constitutional claims determined to be without merit, Mr. McQuistan has not shown that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. As to procedurally defaulted claims, Mr. McQuistan has not shown that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right or that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. A COA is thus unwarranted in this matter.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, I recommend Mr. McQuistan's Petition be **DISMISSED.** Because Mr. McQuistan's claims can be decided without a hearing, I recommend Mr. McQuistan's request for hearing be denied. Finally, I recommend Mr. McQuistan not receive a Certificate of Appealability.

Dated: February 10, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).